UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
EDITH PIRINEA,

                      Plaintiff,

    -against-

WESTCHESTER DENTAL, P.C.,
DANIELA HIJAZIN, and EYAD HIJAZIN

                      Defendants.
------------------------------------------X

Case No.: 1:22-cv-4807 (PMH) (PED)

**FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff, EDITH PIRINEA ("Plaintiff" or "Ms. Pirinea"), by and through her attorneys, JACOBS P.C., as and for her First Amended Complaint against Defendants, Westchester Dental, P.C. (the "Practice"), Daniela Hijazin ("Dr. Hijazin"), and Eyad Hijazin ("Eyad") (the Practice, Eyad, and Dr. Hijazin are collectively referred to as the "Defendants"), as follows:

### PARTIES AND JURISDICTION

1. Plaintiff is and was at all relevant times a resident of the State of New York, Westchester County.

2. Plaintiff is a former employee of Defendants, where she held the informal title of Office Manager. Plaintiff worked for the Defendants for more than 20 years.

3. Defendant Westchester Dental, P.C. is a professional corporation duly incorporated under the laws of the State of New York with its principal place of business at 444 East Boston Post Road, Mamaroneck, NY 10543 in the county of Westchester.

4. Defendant Daniela Hijazin is and was at all relevant times a resident of the State of New York, Westchester County.

5. This court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2601 et seq and 29 U.S.C. § 794(a).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), as it is the district in which Defendants conduct business and in which the conduct complained of occurred.

7. Plaintiff brings this retaliation action on her own behalf under the False Claims Act, 31 U.S.C. § 3729 et seq, and asserts wage claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). This Court has jurisdiction over the case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1331.

## FRAUDULENT BILLING PRACTICES & PLAINTIFF'S TERMINATION

8. Over the course of many years, Plaintiff became aware of Defendants' fraudulent medical billing practices as it related to Medicaid patients.

9. After Plaintiff questioned and investigated these practices, and she was fired in retaliation by the Defendants.

10. Specifically, among other things, the Practice billed for services not performed.

11. It has become apparent to Plaintiff that, for over twenty years, Dr. Hijazin, on behalf of the Practice, directed Plaintiff to execute false insurance submissions by including fraudulent codes on daily claims for codes that were never done so that there would be a larger return of money.

12. Among other things, Defendants would direct the Plaintiff to further their fraudulent conduct by telling her to "make sure after you sen[d] the false claim you specify the note on each chart." Medicaid providers sent letters questioning the Practice as to why there were so many claims being sent for the same coding.

13. Claims made to Medicaid are claims instituted to the United States government for the benefit of the Defendant's patients. Defendant's engaged in Medicaid fraud when they

charged for unused services. The civil False Claims Act protects the Government from being overcharged or sold shoddy good or services. It is illegal to submit claims for payment to Medicare or Medicaid that are false or fraudulent. *See* 31 U.S. Code § 3729.

14. In addition, Dr. Hijazin's husband, Dr. Eyad Hijazin, would send his assistants to certain nursing homes, including Bronxwood Nursing Home and Amber Court Nursing Home, and bill out patients as having MD supervision, as though he were there seeing them in person, even though in fact he was not there.

15. When Plaintiff raised concerns about these practices throughout the course of her employment to the Defendants, last doing so in or about March 2020, and Dr. Hijazin responded by launching a vengeful scheme of retaliation against Plaintiff beginning in or around April 2020 and ultimately culminating in her termination on June 9, 2020.

16. That scheme of retaliation included Ms. Pirinea being called into a meeting in early 2020 to be reprimanded for successfully accomplishing her job duties over the phone rather than on the computer.

17. Although Ms. Pirinea was always an exemplary employee, Dr. Hijazin began being critical of her work in ways that she never before complained.

18. Shortly thereafter, Defendants fired Plaintiff on June 9, 2020.

19. Given the short proximity in time to Plaintiff's complaints about the improper billing practices, Plaintiff was clearly retaliated against for making the foregoing complaints.

20. The unlawful conduct perpetuated by the Practice and Dr. Hijazin was egregious and has substantially damaged Ms. Pirinea mentally, emotionally, physically, and monetarily.

21. She has suffered severe emotional distress and simply has not been herself since.

22. She has sought treatment from a qualified therapist and continues to suffer from emotional distress and anxiety as a result of her unlawful termination from the

Practice.

## WAGE CLAIMS AGAINST THE DEFENDANTS

23. As set forth above, Ms. Pirinea was employed by the Defendants for over 20 years, with her employment ended on June 9, 2020.

24. At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and the NYLL. Indeed, Defendants had the power to hire and fire the Plaintiffs, controlled the terms and conditions of Plaintiff's employment, and determined the rate and method of Plaintiff's compensation in exchange for her services.

25. In each year from 2016 to 2020, upon information and belief, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000.

26. Moreover, because the Defendants operate a dental office, the Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203 (r-s). Alternatively, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, during her employment with the Defendants, Plaintiff regularly made telephone calls to persons located outside of the State of New York. Moreover, numerous items that were used in the Practice on a daily basis are goods produced outside of the State of New York.

27. Ms. Pirinea's typical weekly work schedule that was recorded by the Defendants was from 9:30 a.m. to 5 p.m. (approximately 37.5 hours per week). The Defendants orally told the Plaintiff that her hourly rate was $31 dollars per hour, but as shown below, because the Plaintiff actually worked typically in excess of sixty (60) hours per week, Plaintiff's hourly rate was in reality much lower.

28. In addition to the Plaintiff's typical 37.5-hour workweek, Ms. Pirinea had an agreement with Dr. Hijazin and the Practice such that she would earn additional money for her work

marketing the Practice at the hourly rate that the Defendants orally told her ($31 dollars per hour worked).

29. To that end, Ms. Pirinea created a service plan to help patients with no insurance, called "The Westchester Dental Plan," which resulted in many patients joining the Practice.

30. Since 2014, Plaintiff made introductions to the Practice, which greatly enhanced the Practice's success.

31. In violation of the FLSA and the NYLL, the Defendants never compensated Plaintiff for the hours that devoted to marketing whatsoever.

32. Adding insult to injury, the Defendants did not utilize any device to track Ms. Pirinea's marketing work hours. Instead, the Defendants directed Ms. Pirinea to work off the clock outside of normal working hours to market the Practice without being compensated her for her time and efforts.

33. In total, Plaintiff devoted approximately 20 to 25 additional hours per workweek to marketing for the Practice.

34. Thus, during the time period relevant to this action, Ms. Pirinea worked in excess of sixty (60) hours per week performing work for the Defendants for which she was not paid an overtime premium for.

35. For example, in the final week in February 2020, Plaintiff worked approximately sixty (60) hours for Defendants, and she was not paid any additional overtime compensation arising out of her work that week.

36. That is, Defendants maintained a policy and practice of requiring the Plaintiff to work in excess of 40 hours a week without paying her appropriate spread of hours pay, and overtime compensation as required by the FLSA and NYLL.

37. Specifically, as set forth above, while the Defendants set the Plaintiff's normal schedule for

37.5-hours per workweek, they also required the Plaintiff to work approximately 20 to 25 additional hours per workweek for marketing and did not compensate the Plaintiff for those hours whatsoever. Accordingly, because the Plaintiff was required to work in excess of 60 hours per workweek, Plaintiff was required to be paid 1.5 times her regular rate for each hour worked in excess of 40 hours per week.

38. The Defendants failed to compensate the Plaintiff at 1.5 times her regular rate for hours worked in excess of 40 hours per week, in violation of the FLSA and NYLL.

39. Plaintiff's work duties required neither discretion nor independent judgment.

40. No notification, either in the form of posted notices or other means, was ever given to Plaintiff regarding overtime and wages under the FLSA and NYLL.

41. Defendants did not provide Plaintiff with an accurate statement of wages, as required by NYLL 195(3).

42. Defendants did not give any notice to Plaintiff of her rate of pay, the employer's regular pay day, and such other information as required by NYLL §195(1).

43. Defendants' unlawful conduct was intentional (they directed her to work off-the-clock), willful, in bad faith, and caused significant damages to Plaintiff.

44. In addition, Defendants violated NYLL 191 in that they paid the Plaintiff on a biweekly basis. Under NYLL 191, manual workers such as the Plaintiff are required to be paid on a weekly basis.

45. Plaintiff was a manual worker under NYLL 191, and is entitled to an award of liquidated damages and attorneys' fees.

46. Dr. Hijazin is sued herein individually as Plaintiff's employer under the FLSA and NYLL. Specifically, Dr. Hijazin possesses operational control over the Practice, has an ownership interest in the Practice, and controls significant functions of the Practice. Dr. Hijazin determines the wages and compensation of the employees of Defendants, including the

Plaintiff, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

47. Similarly, Eyad is sued herein individually as Plaintiff's employer under the FLSA and NYLL. Specifically, Eyad possesses operational control over the Practice, has an ownership interest in the Practice, and controls significant functions of the Practice. Eyad determines the wages and compensation of the employees of Defendants, including the Plaintiff, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## COUNT I

### RETALIATION IN VIOLATION OF THE FEDERAL FALSE CLAIMS ACT
**(Against Defendant Westchester Dental, P.C.)**

48. Plaintiff realleges and incorporates the previous paragraphs by reference.

49. The retaliation provision of the False Claims Act protects an employee or contractor from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h).

50. Relief for violating this section includes reinstatement of the employee, contractor, or agent with the same level of seniority that person would have had but for the discriminatory conduct, as well as double damages for back pay, interest on back pay, and special damages. Relief also includes reasonable attorneys' fees. Id. § 3730(h)(1)(b).

51. Plaintiff was terminated shortly after raising concerns about fraudulent billing practices concerning Medicaid patients.

52. Plaintiff has been harmed and continues to be harmed in that she has and will continue to

suffer economic damages, as well as humiliation, outrage, and loss of professional reputation, as a result of Defendants' actions.

## COUNT II

**RETALIATION IN VIOLATION OF THE STATE FALSE CLAIMS ACT**
**(Against Defendant Westchester Dental, P.C.)**

53. Plaintiff realleges and incorporates the previous paragraphs by reference.

54. Defendants violated Section 191 of the New York False Claims Act § 191.

55. Defendants have intentionally retaliated against Plaintiff by marginalizing her and terminating her without a valid reason.

56. Plaintiff was terminated shortly after raising concerns about fraudulent billing practices concerning Medicaid patients.

57. Plaintiff has been harmed and continues to be harmed in that she has and will continue to suffer economic damages, as well as humiliation, outrage, and loss of professional reputation, as a result of Defendants' actions.

## COUNT III

**UNPAID WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(Against All Defendants)**

58. Plaintiff realleges and incorporates the previous paragraphs by reference.

59. As set forth above, the Defendants were the Plaintiff's employer as defined under the FLSA.

60. As set forth above, in addition to her typical 37.5-hour workweek, Plaintiff worked approximately 20 to 25 additional hours per workweek for the Defendants. Plaintiff was not compensated for this work whatsoever in violation of the FLSA.

61. The Defendants' violation of the FLSA was willful.

62. Plaintiff has been damaged in an amount to be determined at trial.

## COUNT IV

**UNPAID WAGES IN VIOLATION OF NEW YORK LABOR LAW**
**(Against All Defendants)**

63. Plaintiff realleges and incorporates the previous paragraphs by reference.

64. As set forth above, in addition to her typical 37.5-hour workweek, Plaintiff worked approximately 20 to 25 additional hours per workweek for the Defendants. Plaintiff was not compensated for this work whatsoever.

65. Defendants' failure to pay Plaintiff in accordance with the NYLL was willful within the meaning of NYLL § 663.

66. Plaintiff has been damaged in an amount to be determined at trial.

## COUNT V

**UNPAID OVERTIME UNDER THE FAIR LABOR STANDARDS ACT**
**(Against All Defendants)**

67. Plaintiff realleges and incorporates the previous paragraphs by reference.

68. As set forth above, the Defendants are the Plaintiff's employer as defined under the FLSA.

69. Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiff overtime compensation at a rate of one and one-half times her regular rate of pay for each hour worked in excess of forty hours in a workweek.

70. Defendants' failure to pay Plaintiff overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

71. Plaintiff has been damaged in an amount to be determined at trial.

## COUNT VI

**UNPAID OVERTIME UNDER NEW YORK LABOR LAW**
**(Against All Defendants)**

72. Plaintiff realleges and incorporates the previous paragraphs by reference.

73. Defendants, in violation of N.Y. Lab. Law § 190 et seq., and supporting regulations of the New York State Department of Labor, failed to pay the Plaintiff overtime compensation at rates of one and one-half times her regular rate of pay for each hour worked in excess of forty hours in a workweek.

74. Defendants' failure to pay the Plaintiff overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

75. Plaintiff has been damaged in an amount to be determined at trial.

## COUNT VII

### VIOLATION OF PAY FREQUENCY REQUIREMENTS UNDER NEW YORK LABOR LAW
(Against All Defendants)

76. Plaintiff realleges and incorporates the previous paragraphs by reference.

77. Defendants did not pay the Plaintiff on a regular weekly basis, in violation of NYLL §191.

78. Defendants are liable to Plaintiff in an amount to be determined at trial.

## COUNT VIII

### VIOLATION OF WAGE NOTICE REQUIREMENTS UNDER THE NEW YORK LABOR LAW
(Against All Defendants)

79. Plaintiff realleges and incorporates the previous paragraphs by reference.

80. With each payment of wages, Defendants failed to provide the Plaintiff with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the

wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

81. Defendants are liable to Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## COUNT IX

## **VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR**
(Against all Defendants)

82. Plaintiff realleges and incorporates the previous paragraphs by reference.

83. Defendants failed to pay Plaintiff one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff's spread of hours exceeded ten hours in violation of NYLL §§ 650 et seq. and 12 N.Y.C.R.R. §§ 146-1.6.

84. Defendants' failure to pay Plaintiff an additional hour's pay for each day Plaintiff's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

85. Plaintiff has been damaged in an amount to be determined at trial.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Edith Pirinea requests the following relief from this Honorable Court against Defendants Westchester Dental, P.C., Eyad Hijazin and Daniela Hijazin:

a) A judgment against Defendants in an amount consistent with the damages sustained, in excess of one hundred and twenty-five thousand ($125,000) dollars, including but not limited to back pay, front pay, liquidated damages, emotional distress damages, punitive damages;

b) A judgment for costs and attorneys' fees in favor of the Plaintiff;

c) Awarding Plaintiff liquidated damages in an amount equal to one hundred percent (100%) of

the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

d) Awarding Plaintiff damages for Defendants' violation of the NYLL notice provisions, pursuant to NYLL §§198(1-b), 198(1-d); and

e) Such other relief at law or equity as the Court may deem just and proper.

Dated: New York, NY
July 29, 2022

> Respectfully submitted,
>
> JACOBS P.C.
>
> /s/ Ilevu Yakubov
>
> Ilevu Yakubov
> *Attorneys for Plaintiff*
> 450 Lexington Avenue
> New York, NY 10017
> (718) 772-8704
> leo@jacobspc.com